Rachel Sykes #11778
**PEARSON BUTLER**
1802 S. Jordan Parkway, Suite 200
South Jordan, Utah 84095
(801) 495-4104
rachel@pearsonbutler.com

Gareth Purnell (*pro hac vice*)
**GRIFFIN PURNELL**
2037 Airline Road, Suite 200
Corpus Christi, TX 78412
(361) 262-1776
gareth@griffinpurnell.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH – NORTHERN DIVISION

| | |
|---|---|
| D.S., E.W., and J.G.<br><br>Plaintiff,<br><br>v.<br><br>WILDERNESS TRAINING & CONSULTING, LLC (d/b/a FAMILY HELP AND WELLNESS); WTC Holdco, LLC; SOLSTICE RTC, LLC (a/k/a SOLSTICE WEST); JOURNEY HOME WEST; and JOHN DOE ENTITIES 1-10,<br><br>Defendant. | **COMPLAINT**<br><br>**JURY DEMANDED**<br><br>Case No:<br><br>Judge: |

## PLAINTIFF'S COMPLAINT FOR DAMAGES

COMES NOW Plaintiffs, D.S., E.W., and J.G., by and through counsel, and

1

respectfully allege as follows:

## I. <u>INTRODUCTION</u>

1.     This action arises from the systematic abuse, neglect, exploitation and forced labor of the Plaintiffs at residential facilities that had promised to provide the vulnerable minors with therapeutic treatment.

2.     The Defendants are all a part of the Troubled Teen Industry ("TTI"), which is a notorious moniker that has developed to refer to the nationwide network of for-profit therapeutic programs that prey on so called "troubled teens" and their desperate families.

3.     TTI facilities, like Defendants Solstice RTC, LLC ("Solstice") and Journey Home West ("JHW") operate as profit machines for private equity and investors who operate the facilities through layers of management companies, such as defendants Wilderness Training & Consulting, LLC ("WTC"), otherwise known as Family Help and Wellness ("FHW"), and its manager, WTC Holdco, LLC.

4.     TTI facilities, including several facilities owned and operated by WTC/FHW, are increasingly being shuttered by state regulators or facing financial insolvency following resident injuries and deaths that have garnered substantial media attention.

5.    Like other TTI facilities, the Defendants recruited children through sophisticated marketing that promised families that their children would receive cutting-edge care and developmental services in tranquil, therapeutic settings.

6.    The reality, as seen through the Plaintiffs' experiences, is that after families were sold on the Defendants' promises and then shelled out hundreds of thousands of dollars, their children were abused, neglected, subjected to humiliation and shame, coerced, and forced to perform unpaid labor throughout their stay at the facilities.

7.    The Defendants did this through a systemic method of coercion and control over the students, punishing them through discipline, humiliation, food and hygiene restrictions, and other measures to maintain the students' compliance with the forced labor demands.

8.    The result is that the Defendants substantially profited from the systematic forced labor of vulnerable children while their unsuspecting parents paid thousands of dollars to their children's labor traffickers.

## II. <u>THE PARTIES</u>

9.    Plaintiff D.S. s a 25-year-old resident of New York, New York. She was a minor at all times while a resident at Solstice from May 2015 through February 2017. She was a resident of JHW from February 2017 through November 2020. She turned 18 shortly before leaving JHW.

3

10.     Plaintiff E.W. is a 26-year-old resident of Eugene, Oregon. She attended Solstice from October 2016 through April 2018. She turned 18 while a resident at Solstice. She attended JHW from April 2018 through June 2018.

11.     Plaintiff J.G. is a 25-year-old resident of Bellingham, Washington. She attended Solstice from September 2017 through August 2018. She was a minor the entire time she was at Solstice.

12.     Defendant Solstice RTC is a Utah limited liability company with its principal place of business at 1904 W Gordon Avenue, Layton, Utah, 84041.

13.     Defendant Wilderness Training & Consulting, LLC is the manager of defendant Solstice RTC.

14.     Defendant Journey Home West is a residential transitional living program for young women with its principal place of business at 1018 North 2325 West, Layton, Utah, 84041.

15.     Defendant Solstice RTC owns Journey Home West and is its registered agent.

16.     Defendant Wilderness Training & Consulting, LLC (d/b/a "Family Help and Wellness") is an Oregon limited liability company with its principal place of business at 530 Center Street, NE, Suite 700, Salem, Oregon 97301.

17.     Wilderness Training & Consulting, LLC is the manager of defendant Solstice RTC.

18.     Wilderness Training & Consulting, LLC provides financial stability, accounting and marketing services, and advice to its partner programs.

19.     Wilderness Training & Consulting, LLC provides financial stability, accounting and marketing services, and advice to defendant Solstice RTC.

20.     Wilderness Training & Consulting, LLC provides financial stability, accounting and marketing services, and advice to defendant Journey Home West.

21.     Defendant WTC Holdco, LLC is an Oregon limited liability company with its principal place of business at 530 Center Street, NE, Suite 700, Salem, Oregon 97301.

22.     WTC Holdco, LLC is the manager of defendant Wilderness Training & Consulting, LLC.

23.     WTC Holdco, LLC provides financial stability, accounting services, and marketing and managing assistance to its partner programs.

24.     WTC Holdco, LLC provides financial stability, accounting services, and marketing and managing assistance to defendant Solstice RTC.

25.     WTC Holdco, LLC provides financial stability, accounting services, and marketing and managing assistance to defendant Wilderness Training & Consulting, LLC.

26.     WTC Holdco, LLC provides financial stability, accounting services, and marketing and managing assistance to defendant Journey Home West.

27.    WTC Holdco, LLC's members include Wayne Laird of Oregon; JLC Family, LLC; Opal Creek Capital, LLC, a private equity firm; PGO, LLC; and FHW/THP Blocker, Inc., a Texas private equity firm.

28.    Defendants John Doe entities 1-10 are entities, including but not limited to insurance companies, management companies, and other business entities, whose identities are presently unknown to Plaintiffs but who may be liable for the acts and omissions alleged herein.

### III.    JURISDICTION AND VENUE

29.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves claims arising from a federal question under 18 U.S.C. §§ 1581, 1584, 1589, 1590, 1594, 1595(a), and 2255.

30.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiffs and the Defendants, and the amount in controversy in this case exceeds $75,000.00, exclusive of costs and interest.

31.    This Court has general and specific jurisdiction over Solstice because its principal place of business is in Utah and because the claims in this matter arise out of Solstice's contacts with Utah.

32.    This Court has general and specific jurisdiction over JHW because its principal place of business is in Utah and because the claims in this matter arise out of Solstice's contacts with Utah.

33.     This Court has specific jurisdiction over WTC Holdco, LLC because it conducts substantial business in Utah and because it manages and directs WTC/FHW and Solstice, and through that control and oversight purposefully created minimum contacts with Utah when it availed itself of, and benefited from, directing activities in the state of Utah. Plaintiffs' claims arise out of WTC Holdco, LLC's contacts with Utah, WTC/FHW, and Solstice.

34.     This Court has specific jurisdiction over Wilderness Training & Consulting, LLC because it conducts substantial business in Utah and because it manages Solstice, and through that control and oversight purposefully created minimum contacts with Utah when it availed itself of, and benefited from, directing activities in the state of Utah. Plaintiffs' claims arise out of Wilderness Training & Consulting, LLC's contacts with Utah.

35.     This Court has specific jurisdiction over the claims of all Plaintiffs because their injuries arose from conduct that occurred at facilities located in Utah, and their claims directly relate to that Utah-based conduct.

36.     Venue is proper in this Court pursuant to 18 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged occurred within this judicial district.

7

## IV.    **STATEMENT OF FACTS**

### A. Defendants Falsely Promised Industry Leading Therapeutic Services in A Safe and Nurturing Environment for Teens Led by Trained and Qualified Professionals

37.    Defendants are a sophisticated for-profit teen and young adult therapeutic care enterprise of investors, private equity, management and consulting companies, and so-called therapeutic facilities for teens and young adults.

38.    Defendants have collectively profited from their involvement in this enterprise through generating millions of dollars in revenue by holding themselves out as expert mental healthcare providers to desperate families and so called "troubled teens."

39.    The below is a picture taken from FHW's website showing the cluster of affiliated facilities, including Solstice, under its management and control:



40.     Defendants, as they do in the picture below taken from WTC/FHW's website, market their facilities, like Solstice and JHW as industry leading "program partners" that provide "outstanding care and outcomes":

> **Who are the program partners?**
> FHW partners are some the leading experts in adolescent behavioral health with the education, experience, and passion to provide outstanding care and outcomes

41.     Defendants specifically market to children with significant and unique vulnerabilities, including self-image issues, peer pressure, bullying, low self-esteem, depression, and anxiety.

9

42.    Because of these unique mental health issues, residents at facilities like Solstice and JHW, or any of WTC/FHW's other facilities, are at an elevated risk of trauma and are especially vulnerable.

43.    WTC/FHW markets their facilities as high quality last stops for children and families when other treatment options have failed, stating the following on its website:

> "When local options fail or lack the requisite intensity, FHW partner programs step in. Families find us looking for high quality, professional provided care for their child. Across a variety of ages and diagnoses, and program types, FHW program partners provide the answers our families are seeking."

44.    Defendants advertised Solstice as being a "groundbreaking residential treatment center for troubled adolescent girls" where teenage women were taught to believe in themselves, as shown in the below picture from Solstice West's website:

> Solstice RTC is a groundbreaking residential treatment center for troubled adolescent girls. Through a unique combination of therapeutic programs based upon both traditional and holistic mental health treatment, we treat our clients with age and gender specific techniques. We strive to empower teenage women with the ability to believe in themselves and provide the tools and motivation required to instill these beliefs for life.

45.    WTC/FHW affirmatively promised improvement, stating on its website that "[a]fter your child goes through one of our programs, they will have developed the skills necessary to lead a healthier, happier life." (emphasis added)

10

46.    WTC/FHW markets its partner programs as a natural progression, with students "progressing" through care such that they leave one facility and move straight into another.

47.    The following is a picture from WTC/FHW's website showing the marketed progression between WTC/FHW owned and controlled facilities, including Solstice and JHW (shown in the picture as "Solstice Journey Program"):



48.    This step-by-step integration allows Defendants, as they did with E.W. and D.G. to trap residents into a years' long commitment wherein the resident stays under Defendants' control, continues to work, and the resident and/or their family continues to pay Defendants hundreds of dollars per day.

11

49.    Solstice told E.W. and D.G. that they had to go to JHW from Solstice, and that if they did not, they would be homeless and unable to finish high school.

50.    Tim Dupell is WTC/FHW's founder and CEO.

51.    Tim Dupell is also the manager of Opal Creek Capital, LLC, which is a private equity firm that is a member of defendant WTC Holdco, LLC.

52.    Tim Dupell personally represented on WTC/FHW's website, as shown below, that WTC/FHW partners (including Solstice and JHW) would treat students with respect and compassion, that families could trust in "increased safety" for their children, and that FHW had "strong strategic and financial management" that made it and its partner facilities "caring and stable.":

> **Operator ownership creates exceptional dedication.** A significant level of operator ownership creates increased safety and consistency that families can trust. Our program owners are fully vested in helping teens and young adults improve their lives.
>
> **Partner with great people.** I only want to partner with great people who care about providing high levels of respect, dignity and compassion. This creates a strong culture and makes it enjoyable to come to work every day.
>
> **Experience matters.** Experience in the industry and passion for helping families combined with strong strategic and financial management creates a sustainable, caring and stable organizational environment.

53.    Plaintiffs and their families relied on the above representations when choosing to enter WTC/FHW's facilities, to move from one to the other, and to remain in them for years, costing them hundreds of thousands of dollars.

54.     Defendants never marketed the true reality of their partner programs, which was that students were subjected to physical abuse, neglect, food and clothing deprivation, injury, coercion, and continuous forced labor.

### B. Solstice and JHW Employed Systemic Abuse, Isolation, Punishment, and Threats to Coerce Plaintiffs Into Forced Labor

55.     WTC/FHW facilities all employ a similar method of controlling residents through coercion, and emotional, psychological, and physical abuse.

56.     At WTC/FHW facilities, discipline and consequences are the centerpiece of an environment in which vulnerable children and young adults are psychologically broken down into compliance starting on their first day of admission.

### A. Pattern of Systematic Abuse, Isolation, Punishment, and Threats at Solstice

57.     All of the Plaintiffs were minors while at Solstice.

58.     All residents at Solstice were immediately stripped of all "privileges" when they arrived.

59.     Solstice took complete and exclusive control of the residents' access to food, clothing, hygiene, and their ability to speak, and limited all of it under a privileges system wherein access/permission was granted solely if residents unquestionably complied with Solstice's commands.

60.    Solstice used isolation and discipline as a coercive tool to force vulnerable children into compliance with forced labor.

61.    Solstice placed residents on "comm block" as punishment where they would be forbidden from speaking to anyone for days.

62.    Solstice placed residents on "basement protocol" as punishment where they were forced to drag a mattress to the basement and stay there day and night for days while all lights were left on.

63.    The basement was known as "The Lodge" and residents would be sent there for minor infractions at the whims of Solstice staff.

64.    Solstice placed residents on "Self Focus" or "Ghost" as a punitive measure wherein residents were forced to stay among peers but restricted from talking.

65.    Solstice placed residents on Self Focus for days at a time.

66.    The end result was peers would ridicule and shame residents on Self Focus since they couldn't respond.

67.    Peers were even forced to dress and apply makeup to residents on Self Focus, dressing them as they saw them. Peers would often berate residents during this process and dress them in insulting and demeaning ways. This punishment was especially horrific and traumatizing for the vulnerable children on Self Focus who were forced to take the abuse in silence.

14

68.    Self Focus was done publicly to threaten the other residents.

69.    Solstice employed a draconian disciplinary system that also relied on physical punishment.

70.    Solstice students were forced to exercise to the point of exhaustion and sickness as punishment for alleged non-compliance with Solstice staff's commands.

71.    Solstice employed a fitness instructor with a military background who would force students to run, do jumping jacks, pushups, and sit ups for hours on end until they passed out or vomited.

72.    Solstice would sentence resident girls to perform extensive exercise as a punishment.

73.    Solstice restricted meals and access to food as punishment for non-compliance.

74.    Solstice stated its discipline and consequences were "natural, logical and time-limited" and that they were all "therapeutically based."

75.    The punishment Solstice used on residents was not logical or therapeutically based.

76.    Solstice cut off all direct contact between Plaintiffs and their families for their first months at Solstice limiting Plaintiffs to hand-written letters.

77.     Solstice staff screened all outgoing letters and would force residents to re-write any letters that mentioned anything negative about Solstice. This left residents, including Plaintiffs, completely unable to ask their families for help.

78.     Once Plaintiffs earned the privilege of calling their families, after being abused for months, Solstice staff listened in on all calls and would pause or end calls if Plaintiffs mentioned anything negative about Solstice.

79.     Solstice would punish any resident that spoke negatively about Solstice on a call with their family.

80.     Solstice restricted residents' ability to talk honestly with their families to keep residents enrolled and working and to keep the tuition payments flowing.

81.     Solstice staff would tell parents that residents were manipulating them whenever they spoke negatively of Solstice, and that the parents should not believe their children.

82.     The end result was that if any residents, including Plaintiffs, wanted to tell their families about their conditions and abuse, Solstice would punish them and tell their parents their children were lying.

83.     Solstice used shame and humiliation to coerce residents into compliance.

84.    Solstice used attack therapy, which ritualized public humiliation, where Solstice staff would verbally assault a resident's character, appearance, and perceived shortcomings. Solstice staff would also encourage peers to do the same.

85.    Solstice used attack therapy as punishment for residents' non-compliance and the degree or severity of the attacks were directly related to the alleged degree of non-compliance.

86.    Solstice promised that it would not "engage in nontraditional or high-risk interventions."

87.    Attack therapy is a punitive and non-traditional process.

88.    Solstice made residents participate in "feedback group" where residents were forced to write out their flaws and read them to staff and other peers. Other times, Solstice staff would read notes they had written about residents' flaws in front of the group. This was all done punitively.

89.    All residents were subjected to invasive and repeated strip searches in front of staff. Solstice allowed male staff to search teenage girls, and to be in the room watching while they were searched with nothing more than a small towel to cover their bodies. Staff would tell them to "dance around" in the room while naked. This happened frequently and without cause.

90.    Solstice used violent physical restraints against teenage girls as punishment.

91.   Frequently, grown men would use violent physical restraints on 13- and 14-year-old girls.

92.   Solstice used physical restraint immediately and publicly against girls who did not comply with Solstice staff demands.

93.   Solstice stated on its website that physical force and restraint would not be used against residents, representing that "fear of punishment tends to be short lived, so that when the external controls are removed the 'change' departs with it."

94.   Solstice used physical violence, physical and emotional abuse, and manipulation to obtain residents' compliance and to swiftly and publicly punish any teenage girls that got out of line as a threat to the others.

95.   Solstice's conduct created a highly fearful environment of constant conflict with no trust between residents. This put Plaintiffs in a state of persistent hypervigilance, fear, and isolation, which Solstice fostered to ensure their compliance.

**B. Pervasive Forced Labor and Economic Exploitation at Solstice**

96.   Within this punitive and hypervigilant environment, Solstice required all residents to perform hours of daily manual labor without pay.

97.   Solstice used a system to place girls into one of four groups: summer, spring, autumn, and winter. Girls would rotate groups each week.

18

98.    Each group was assigned different forced labor tasks, but all groups were required to perform labor throughout the day.

99.    Forced labor at Solstice included, but was not limited to the following:

a.    Cleaning all Solstice facilities, to include vacuuming, dusting, wiping base boards, hand mopping floors with rags, cleaning toilets, taking apart and cleaning an industrial stove, cleaning out refrigerators, cleaning out tampon bins, cleaning out dryer vents and air conditioning vents with a knife;

b.    Kitchen operations, including food preparation and service, washing dishes and trays, cleaning, sweeping, mopping, restocking supplies;

c.    Shoveling snow from Solstice property walkways, ramps, and the parking lot;

d.    Sweeping and cleaning Solstice property walkways, ramps, and the parking lot;

e.    Deep cleaning the "work out shed," which included removing and cleaning all equipment in the shed;

f.    Raking, bagging, and disposing of leaves;

g.    Landscaping, pulling weeds and watering plants and grass;

h.  Cleaning out Solstice transport vans, including wiping down all floors, windows, and surfaces, removing mud and animal droppings from the vans;

i.  Janitorial services that included plunging toilets without gloves;

j.  Cleaning and washing the cars of Solstice staff members;

k.  Performing quality control inspections with staff, teaching residents how to perform labor, and supervising other residents;

l.  Deep cleaning for weeks to ensure the facility was "tour ready" for prospective residents or for family visits.

100.  All forced labor at Solstice was involuntary for residents and Plaintiffs.

101.  Solstice punished students, including Plaintiffs, whenever they refused to work.

102.  Solstice punished students, including Plaintiffs, whenever Solstice found their work unsatisfactory.

103.  All cleaning and labor were monitored by a Solstice appointed resident "peer leader." The peer leader would inspect all work every day, and if a resident did not clean or perform their task perfectly, the resident got a check mark. Solstice did not pay the peer leader for the supervision of other Solstice residents.

104.   If a resident got too many check marks, they were forced to perform more labor, such as do another deep clean of the kitchen, while other students were allowed to watch a movie.

105.   All residents performed the forced labor described herein for at least 4 hours every weekday and at least 6 hours each weekend day.

106.   Solstice forced students to perform labor while sick or injured.

107.   Plaintiffs were forced to perform labor while sick and injured.

108.   Solstice also forced residents, including Plaintiffs, to perform labor at volunteer organizations and at local farms.

109.   Solstice marketed this volunteer work in the community and on its website to give the facility a positive public image.

110.   The volunteer work was mandatory, and Solstice punished students who did not comply.

111.   Solstice would take away "privileges" and threaten to take away privileges from residents that refused to work or those that did unsatisfactory work.

112.   As a result of refusing to work, or performing unsatisfactory work, students and Plaintiffs lost access to food, hygiene products, were placed on Ghost Phase, were sent to The Lodge, were made to perform exercise until they were sick and exhausted, or had communication with their families restricted. Plaintiffs all believed they would suffer these punishments at anytime if they refused to work.

113. Solstice shamed students in "feedback group" who did not comply fully with its forced labor demands.

114. Plaintiffs all believed they would be shamed in feedback group as a punishment for refusing to work.

115. If a student refused to work while sick or injured, Solstice would make them run or do hundreds of jumping jacks.

116. Additional forced labor chores and assignments were given out to residents as punishment. If a resident left a water bottle in a room, the only way to get it back would be to pick a chore paper from a job and perform the labor. The chore could be spending hours cleaning a bathroom with a toothbrush.

117. Plaintiffs all believed they would be punished if they refused to work.

118. Plaintiffs all believed they would be punished by removing privileges if they refused to work. This included food restrictions, the ability to speak, and the ability to communicate with their families.

119. Plaintiffs all believed they would be punished with excessive exercise if they refused to work.

120. Plaintiffs never saw employees clean at Solstice.

121. Solstice never paid Plaintiffs or their families for the hundreds of hours of forced labor that Plaintiffs performed while at Solstice.

122.   Solstice received an economic benefit from the forced labor of residents by replacing paid employees and reducing operational costs for: (a) custodial and maintenance services; (b) administrative and coordination services; (c) resident and labor supervision, scheduling, and management;(d) marketing; and (e) quality control.

123.   Solstice required the labor to be performed to exacting and commercial grade standards.

124.   Solstice disguised the work as discipline that promoted a positive peer culture, when in reality the labor served primarily to reduce facility operating costs by replacing paid staff with unpaid minor residents.

### C. Forced Labor Under Threat at JHW

125.   JHW forced Plaintiffs E.W. and D.S. to perform forced labor the entire time they were at JHW.

126.   E.W. and D.S. were told from day one at JHW that being at JHW was a privilege that would be taken away for any non-compliance with forced labor demands.

127.   JHW forced E.W. and D.S. to clean JHW for hours each day.

128.   JHW forced E.W. and D.S. to perform hours of unvoluntary community service, which included off-site manual labor.

129.    JHW promoted the community service and used it to maintain a positive image in the community.

130.    JHW removed privileges for refusing to perform labor or for doing it incorrectly.

131.    JHW forced E.W. and D.S. to perform labor while sick and injured.

132.    JHW made it very clear to E.W. and D.S. that noncompliance would result in them being sent back to Solstice.

133.    JHW threated E.W. and D.S. that if they did not work at JHW they would be homeless.

134.    Once D.S. was too old to return to Solstice, JHW told her it would involuntarily confine her to a psychiatric hospital if she refused to perform labor.

135.    JHW used forced labor to replace paid staff.

**D. Specific Harm to Plaintiffs**

**D.S.**

136.    As a direct result of Defendants' conduct, D.S. has suffered:

a.  Permanently damaged knee that dislocated while at Solstice during forced exercise and then never properly healed because Defendants denied her medical care and forced her to exercise and perform labor for years after it dislocated without accommodation;

b.  Multiple concussions during forced exercise and labor;

c.  Severe psychological distress;

d.   Delayed academic progress;

e.  Lost wages and economic exploitation as a result of performing thousands of hours of unpaid forced labor;

f.  Loss of trust of therapeutic institutions;

g.  Diagnoses of Post-Traumatic Stress Disorder, Obsessive Compulsive Disorder, severe social anxiety;

h.  Persistent sleep disturbances; and

i.  Difficulty forming and maintaining healthy relationships.

**E.W.**

137.  As a direct result of Defendants' conduct, E.W. has suffered:

a.  Severe physical assault and violent restraint by Solstice staff;

b.  Diagnosis of Post-Traumatic Stress Disorder;

c.  Chronic gastrointestinal issues since leaving JHW;

d.  Severe psychological distress;

e.  Delayed academic progress;

f.  Difficulty forming and maintaining healthy relationships;

g.  Lost wages and economic exploitation as a result of performing thousands of hours of unpaid forced labor.

**J.G.**

138.   As a direct result of Defendants' conduct, J.G. has suffered:

   a.   Severe psychological distress;

   b.   Delayed academic progress;

   c.   Difficulty forming healthy relationships;

   d.   Lost wages and economic exploitation as a result of performing thousands of hours of unpaid forced labor;

   e.   Severe worsening of an eating disorder;

   f.   Diagnosis of Post-Traumatic Stress Disorder;

   g.   Difficulty forming and maintaining healthy relationships;

   h.   Loss of trust of therapeutic institutions.

## V. <u>CAUSES OF ACTION</u>

### <u>COUNT ONE</u>

**Violations of TVPRA  18 U.S.C. §§ 1595 and 1584**
**(All Plaintiffs against Solstice, WTC, and WTC Holdco, LLC)**
**(Plaintiffs E.W. and D.S. against JHW)**

139.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

140.   The Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) provides a civil cause of action to trafficking victims like Plaintiff against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by

receiving anything of value from participation in a venture which that person knew or should have known has engaged in…" violation of any section of 18 U.S.C. §§ 1581, *et seq*.

141.   Plaintiffs were victims of forced labor trafficking in violation of 18 U.S.C. § 1584.

142.   Under 18 U.S.C. § 1584, it is unlawful to knowingly and willfully hold another person to involuntary servitude.

143.   Defendants knowingly and willfully held Plaintiffs in involuntary servitude in several ways, including but not limited to the following:

  a. Creating and maintaining a system wherein Plaintiffs and all other residents were forced to work against their will;

  b. Requiring Plaintiffs and other trafficking victims to work excessive hours every day in all weather conditions;

  c. Retaining the financial proceeds from Plaintiffs' labor and that of other trafficking victims while providing Plaintiffs or other survivors with no compensation;

  d. Maintaining complete control over Plaintiffs' and other survivors throughout the labor arrangement, dictating when, where, and for how long they would work, and under what conditions;

e. Maintaining complete control over Plaintiffs' and other survivors' living conditions, food, hygiene, and communications with family and expressly conditioning access to all of it on compliance;

144. Defendants received financial benefit from the forced labor of Plaintiff and other survivors in violation of 18 U.S.C. § 1584.

145. Defendants saved money by using unpaid labor to maintain Solstice and JHW.

146. Plaintiffs suffered damages as a result of Defendants' conduct.

147. Defendants received a financial benefit from running a business that recruited, exploited, and manipulated children from desperate families and held them in involuntary servitude under the guise of helping the children with their mental health struggles.

148. Plaintiffs are entitled to compensatory and punitive damages, restitution, attorneys' fees, costs, and any other relief deemed appropriate.

## **COUNT TWO**

**Violations of TVPRA  18 U.S.C. §§ 1595 and 1589**
**(All Plaintiffs against Solstice, WTC, and WTC Holdco, LLC)**
**(Plaintiffs E.W. and D.S. against JHW)**

149. Plaintiffs hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

150.    The Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) provides a civil cause of action to trafficking victims like Plaintiff against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in…" violation of any section of 18 U.S.C. §§ 1581, *et seq*.

151.    Plaintiffs were victims of forced labor through threats of harm in violation of 18 U.S.C. § 1589.

152.    Under 18 U.S.C. § 1589(a), it is unlawful to knowingly provide or obtain labor or services by means of: (1) force, threats of force, physical restraint, or threats of physical restraint; (2) serious harm or threats of serious harm; (3) abuse or threatened abuse of law or legal process; or (4) any scheme, plan, or pattern intended to cause a person to believe that they would suffer serious harm or physical restraint if they did not perform such labor or services.

153.    Under 18 U.S.C. § 1589(b), it is also unlawful to "knowingly benefit, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services" by the means described in subsection (a).

154.    Under 18 U.S.C. § 1589(c)(2) the term "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, reputational harm…"

155.    Defendants violated 18 U.S.C. § 1589 because they obtained Plaintiffs' and other survivors' labor through extreme emotional abuse, serious harm in the way of malnutrition, deprivation, psychological harm, physical harm, force, and threats of serious harm.

156.    Defendants further violated 18 U.S.C. § 1589 by employing a systemic discipline system as a scheme to cause Plaintiffs and other survivors to rightly believe they would be subjected to serious harm if they refused to work.

157.    Defendants violated 18 U.S.C. § 1589 in several ways, including but not limited to the following:

a.  Creating, implementing, and maintaining a systematic discipline process that used physical and psychological abuse and threats of physical and psychological abuse to coerce and obtain compliance for forced labor;

b.  Threating to restrict and restricting Plaintiffs' access to food, water, and housing if they did not comply;

c.  Threatening to restrict and restricting Plaintiffs' access to communication with family if they did not comply;

d.  Physically harming students who tried to run or resist in front of Plaintiff and other survivors;

e.  Threatening Plaintiffs with discipline, and giving our discipline, that included forced labor, forced exercise, and psychological punishment if they did not performed unpaid labor;

f.  Shaming students who did not comply in front of Plaintiffs and other survivors;

g.  Shaming Plaintiffs when they did not comply;

h.  Restricting and monitoring Plaintiffs' contact with family members to ensure continuing compliance with forced labor and the steady flow of tuition payments;

i.  Threating to restrict and restricting Plaintiffs' ability to speak if they did not comply.

158.  Defendants profited financially through these violations, and, as such, are liable under 18 U.S.C. §§ 1589(b), 1595(a).

159.  Defendants knowingly received a financial benefit from their violations of the TVPRA by receiving unpaid labor and services that benefited Solstice and JHW.

160.  Defendants saved money by using unpaid labor to maintain Solstice and JHW.

161.   Plaintiff suffered damages as a result of Defendants' conduct.

162.   Defendants received a financial benefit from running a business that recruited, exploited, and manipulated children from desperate families and obtained the children's labor through serious harm and threats of serious harm under the guise of helping the children with their mental health struggles.

163.   Plaintiffs are entitled to compensatory and punitive damages, restitution, attorneys' fees, costs, and any other relief deemed appropriate.

## COUNT THREE

### Violations of TVPRA  18 U.S.C. §§ 1595 and 1590
### (All Plaintiffs against Solstice, WTC, and WTC Holdco, LLC)
### (Plaintiffs E.W. and D.S. against JHW)

164.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

165.   The Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) provides a civil cause of action to trafficking victims like Plaintiff against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in…" violation of any section of 18 U.S.C. §§ 1581, *et seq*.

166.   Defendants benefited from a venture in which Plaintiffs were recruited, transported, and housed for forced labor in violation of 18 U.S.C. § 1590.

32

167.   Under 18 U.S.C. § 1590(a), it is unlawful to "knowingly recruit, harbor, transport, provide, or obtain by any means, any person for labor or services in violation of this chapter."

168.   Defendants violated 18 U.S.C. § 1590 in several ways, including but not limited to the following:

  a.  Creating and disseminating misleading marketing materials that advertised WTC/FHW, Solstice, and JHW as offering legitimate industry leading educational and therapeutic services to recruit Plaintiffs and other survivors;

  b.  Misrepresenting that discipline would be therapeutic and that labor would be voluntary;

  c.  Specifically targeting vulnerable children and their desperate families, including teens struggling mental health issues;

  d.  Housing Plaintiffs and other survivors at all relevant times during which all violations occurred;

  e.  Controlling all aspects of Plaintiffs' communication with the outside world and editing letters to remove any negative mention of WTC/FHW/Solstice/JHW or the forced labor;

f. Coercing Plaintiffs and other survivors to provide labor through comprehensive physical, psychological, and spiritual means;

g. Monitoring and controlling Plaintiffs' and other survivors' behavior during work events to ensure continued compliance;

169. Defendants knowingly received a financial benefit from their violations of the TVPRA by receiving unpaid labor and services that benefited Defendants.

170. Defendants saved money by using unpaid labor to maintain Solstice and JHW.

171. Plaintiffs suffered damages as described herein as result of Defendants' conduct.

172. Defendants received a financial benefit from running businesses that recruited, exploited, and manipulated children from desperate families and forced those children into unpaid labor under the guise of helping the children with their mental health struggles.

173. Plaintiffs are entitled to compensatory and punitive damages, restitution, attorneys' fees, costs, and any other relief deemed appropriate.

## **COUNT FOUR**

**Attempted Violations and Conspiracy to Commit Violations of TVPRA 18 U.S.C. §§ 1584, 1589, 1590, 1594, and 1595**
**(All Plaintiffs against Solstice, WTC, and WTC Holdco, LLC)**
**(Plaintiffs E.W. and D.S. against JHW)**

34

174.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

175.    While, as alleged above, Defendants violated 18 U.S.C. §§ 1584, 1589, and 1590, in the alternative, Defendants are liable because they attempted to and did conspire to violate 18 U.S.C. §§ 1584, 1589, and 1590.

176.    The Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) provides a civil cause of action to trafficking victims like Plaintiff against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in…" violation of any section of 18 U.S.C. §§ 1581, *et seq.*

177.    Under 18 U.S.C. § 1594(a)(b) whoever attempts or conspires to violate §§ 1584, 1589, or 1590 shall be punished in the same manner as a completed violation of each section.

178.    Defendants intended to violate, took the necessary steps to violate, and conspired to violate 18 U.S.C. §§ 1584, 1589, and 1590, as more fully alleged herein.

179.    Plaintiffs suffered damages as described herein as a result of Defendants' conduct.

180.    Plaintiffs are entitled to compensatory and punitive damages, restitution, attorneys' fees, costs, and any other relief deemed appropriate.

## **COUNT FIVE**

**Beneficiary Liability under TVPRA 18 U.S.C. § 1595**
**(All Plaintiffs against Solstice, WTC, and WTC Holdco, LLC)**
**(Plaintiffs E.W. and D.S. against JHW)**

181.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

182.   The Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) provides a civil cause of action to trafficking victims like Plaintiff against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in…" violation of any section of 18 U.S.C. §§ 1581, *et seq*.

183.   As described herein, all Defendants violated several sections of 18 U.S.C. §§ 1581, *et seq*.

184.   All Defendants participated in a venture to provide therapeutic services to so-called troubled teens that forced those teens to perform unpaid labor for Defendants' benefit.

185.   Defendants knowingly benefited by receiving financial benefits and other things of value through their participation in the venture to provide therapeutic services to so-called troubled teens, including Plaintiffs.

186.    Defendants knew or should have known their continuous and systematic practice of forcing teenage girls into labor through force, abuse and threats of force and abuse was in violation of multiple sections of the TVPRA.

187.    All Defendants financially benefited, as described herein, because by using unpaid labor to maintain facilities, they saved money they would have spent paying fair wages and taxes.

188.    All Defendants received value by forcing Plaintiffs to perform so-called volunteer community work through marketing such work as positive and thereby giving Defendants a positive public image.

189.    Plaintiffs suffered damages as described herein as a result of Defendants' conduct.

190.    Plaintiffs are entitled to compensatory and punitive damages, restitution, attorneys' fees, costs, and any other relief deemed appropriate.

## COUNT SIX

### VIOLATIONS OF U.S.C. § 2255
### Beneficiary Liability under TVPRA 18 U.S.C. § 1595
### (All Plaintiffs against Solstice, WTC, and WTC Holdco, LLC)

191.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

192.    The Child Abuse Victims' Rights Act (18 U.S.C. § 2255) provides a civil remedy for minors who suffer personal injuries as a result of certain federal crimes, including forced labor under 18 U.S.C. §§ 1589 and 1590.

193.    Plaintiffs were minors while at Solstice.

194.    Plaintiffs suffered personal injuries, as described herein, as a result of Defendants' TVPRA violations.

195.    Under 18 U.S.C. § 2255, Defendants' TVPRA violations entitle Plaintiffs to recover the following: actual damages, liquidated damages in the amount of $150,000, attorney's fees, costs of litigation, punitive damages, and all other equitable relief as the court determines to be appropriate.

## VI.    JURY TRIAL

196.    Plaintiff demands a jury trial on all issues.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A. That process issue according to law;

B. Statutory damages of $150,000 per violation pursuant to 18 U.S.C. § 2255 for Plaintiffs who were minors at the time of the violations.

C. That Defendants be served with a copy of Plaintiffs' Complaint and show cause why the prayers for relief requested by Plaintiffs herein should not be granted;

D. That the Plaintiffs be granted trial by jury;

E. That the Court enters judgment against Defendants for all general and compensatory damages allowable to Plaintiffs;

F. That the Court enters judgment against Defendants for all special damages allowable to Plaintiffs;

G. That Plaintiffs recover all possible damages for Plaintiffs' injuries and pain and suffering;

H. That the Court enters judgment against Defendants for all other relief sought by Plaintiffs under this Complaint;

I. That the cost of these actions be cast upon Defendants;

J. That the Court grant Plaintiffs such further relief which the Court deems just and proper.

Dated: December 30, 2025

Respectfully submitted,

*/s/ Rachel L. Sykes*
Rachel L. Sykes
**PEARSON BUTLER**
1802 S. Jordan Parkway, Suite 200
South Jordan, Utah 84095
(801) 495-4104
rachel@pearsonbutler.com
*Counsel For Plaintiffs*