NATHAN R. SKEEN (12662)
NATHAN A. CRANE (10165)
CHRISTOPHER W. DROUBAY (12078)
SPENCER FANE LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
nskeen@spencerfane.com
ncrane@spencerfane.com
cdroubay@spencerfane.com
*Attorneys for Defendants*

---

## UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH

| | |
|---|---|
| D.S., E.W., and J.G., <br><br> Plaintiffs, <br><br> vs. <br><br> WILDERNESS TRAINING & CONSULTING, LLC (d/b/a FAMILY HELP AND WELLNESS), WTC HOLDCO, LLC, SOLSTICE RTC, LLC (a/k/a SOLSTICE WEST), JOURNEY HOME WEST; <br><br> Defendants. | **DEFENDANTS' MOTION TO DISMISS COMPLAINT** <br><br> Case No. 1:25CV209 TC <br><br> Judge Tena Campbell |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Wilderness Training & Consulting, LLC (d/b/a Family Help & Wellness); WTC Holdco, LLC; Solstice RTC, LLC (a/k/a/ Solstice West); and Journey Home West (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit their Motion to Dismiss the Complaint [Doc. 1] in its entirety for failure to state a claim upon which relief can be granted.

**INTRODUCTION**

This case has nothing to do with human trafficking. The Complaint alleges, at its core, that Defendants, while acting *in loco parentis*, imposed structure, discipline, and supervision in a treatment environment. Plaintiffs attempt to rebrand Defendants' actions—namely, assigning routine household chores and community service—as violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), which prohibits human trafficking, forced labor, and involuntary servitude. Instead of offering factual or legal support for these serious allegations, however, Plaintiffs rely on volume, rhetoric, and incendiary accusations. Notably, Plaintiffs do not allege facts showing coercion for the purpose of obtaining labor, intent to exploit, or knowing participation in a trafficking venture – all essential elements of their claims. Instead, they rely on generalized grievances, impermissible collective pleading that fails to provide fair notice, *see Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008), and legal conclusions dressed up as facts.

Although the Complaint raises several issues novel to the Tenth Circuit, persuasive authority from numerous other circuits correctly recognizes that requiring minors to perform chores is a standard parental prerogative, not labor trafficking. *See United States v. Toviave*, 761 F.3d 623 (6th Cir. 2014) (holding that requiring children to perform household chores did not constitute forced labor under the TVPRA, even if the parent/guardian is strict or abusive). In another case, the Ninth Circuit Court of Appeals held that purely psychological pressure does not constitute the "serious harm" required by the TVPRA. *See Headley v. Church of Scientology Int'l*, 687 F.3d 1173 (9th Cir. 2012) (holding that public humiliation and threats of "shunning" did not constitute "serious harm" under the TVPRA).

The Complaint further compounds its deficiencies by attempting to disguise time-barred state-law torts as federal trafficking violations. The alleged conduct occurred years before this lawsuit was filed, well outside of the applicable Utah statutes of limitations. Public policy strongly opposes disingenuously stretching the TVPRA to revive expired state-law claims or to federalize traditionally state-regulated areas such as child abuse. Even if the claims were timely or properly brought, they are legally insufficient and cannot survive scrutiny.

Because the Complaint is fundamentally defective in every respect, Defendants request that the Court dismiss this action in its entirety.

## STATEMENT OF FACTS

This action arises from Plaintiffs' participation, as minors, in residential treatment programs operated by Defendants Solstice RTC, LLC ("Solstice") and Journey Home West ("JHW"). The following allegations are drawn from Plaintiffs' Complaint and are presented as undisputed facts, solely for purposes of Defendants' Motion to Dismiss. Even accepting all of Plaintiffs' allegations as true, the Complaint reflects a structured, parent-initiated therapeutic placement, not the unlawful scheme Plaintiffs attempt to depict.

Plaintiffs were enrolled in Defendants' programs by their parents or guardians for behavioral health treatment and therapeutic care. Doc. 1 ¶¶ 2, 5. Plaintiff D.S. attended Solstice from May 2015 to February 2017 and JHW from February 2017 to November 2020; Plaintiff E.W. attended Solstice from October 2016 to April 2018 and JHW from April 2018 to June 2018; and Plaintiff J.G. attended Solstice from September 2017 to August 2018. *Id.* ¶¶ 9–11. The programs were residential, therapeutic environments designed for adolescents with behavioral, emotional, or mental health needs, involving supervision, therapy, and behavioral interventions. *Id.* ¶¶ 41–45.

The Complaint does not allege that Plaintiffs were recruited, transported, or held by Defendants independent of parental authority or consent.

Defendants provided structured residential treatment settings for minors with the authorization of their parents. They did so by offering structured program environments governed by rules, supervision, and behavioral expectations. These programs included level or phase systems (such as "summer, spring, autumn, and winter" groups) through which residents progressed based on participation and compliance, with advancement tied to meeting program expectations and engaging in treatment. *Id.* ¶¶ 97–98.

Failure to comply with program rules and expectations could result in consequences such as loss of privileges, being assigned self-reflection, or being housed away from others. *Id.* ¶¶ 61-68. Defendants restricted or monitored residents' communications with parents and others pursuant to program policies, which were tied to behavioral management and therapeutic objectives. *Id.* ¶¶ 76–80. These allegations reflect structured residential treatment settings for minors operating under parental authority, not unlawful coercion.

Residents participated in daily schedules that included therapy, group activities, and routine responsibilities within the residential setting. These responsibilities included cleaning living spaces, assisting with meals, maintaining facilities, shoveling snow, raking leaves, pulling weeds, and washing vans. *Id.* ¶ 99. Residents were also expected to perform volunteer work in the community. *Id.* ¶¶ 108–110, 128–129.

The alleged "coercion" underlying Plaintiffs' claims consists of mere assertions that failing to perform these responsibilities could result in discipline, loss of privileges, physical exercise such as running or jumping jacks, food restrictions, or delayed advancement within the program

structure. *Id.* ¶¶ 111–112, 115–116. Residents believed that they would be punished with the loss of privileges or other consequences if they failed to perform their responsibilities. *Id.* ¶¶ 117–119. The Complaint does not allege facts establishing threats of serious harm, abuse of legal process, or restraint outside the scope of lawful parental or program authority. Instead, the allegations describe routine program discipline and behavioral accountability mechanisms inherent in residential treatment settings.

A substantial portion of the Complaint also relies on generalized and extraneous allegations, including references to the so-called "Troubled Teen Industry," media reports, and unrelated incidents. *Id.* ¶¶ 2–4. These allegations are not tied to Plaintiffs' individual experiences and do not allege facts showing that such events involved Plaintiffs or caused their alleged injuries.

Taken together, Plaintiffs' own allegations confirm that they resided in structured therapeutic programs selected and funded by their parents, participated in treatment and daily activities, and were subject to supervision, rules, and discipline typical of residential care for minors. Even accepted as true, the Complaint describes dissatisfaction with program structure and conditions, not facts plausibly establishing unlawful coercion or forced labor.

## STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of a complaint; to survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must allege facts that plausibly state a claim for relief. Threadbare recitals of elements, conclusory assertions, and speculative allegations do not suffice. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554 (2007). Courts are not required to accept legal conclusions as true; rather courts look

*only* to "whether the remaining, factual allegations plausibly suggest the defendant is liable." *See*

*Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## ARGUMENT

I.  **PLAINTIFFS FAIL TO STATE ANY CLAIM UNDER THE TVPRA (COUNTS ONE THROUGH FIVE).**

Plaintiffs claim that Defendants violated the TVPRA by holding Plaintiffs in involuntary servitude; receiving benefits of their alleged forced labor; recruiting, transporting, and housing Plaintiffs for alleged forced labor; attempting or conspiring to violate the TVPRA; and benefiting from the alleged forced labor scheme. Plaintiffs' claims stretch the TVPRA beyond all recognition.

The TVPRA, which "was passed to implement the Thirteenth Amendment against slavery or involuntary servitude," is a *narrowly* targeted statute aimed at eradicating modern slavery and human trafficking. *United States v. Edwards*, 995 F.3d 342, 345 (4th Cir. 2021). Indeed, the TVPRA references the Supreme Court's decision that involuntary servitude "should be narrowly interpreted" to apply only to such servitude that is brought about through use or threatened use of physical or legal coercion. 22 U.S.C. § 7101(b)(13) (citing *United States v. Kozminski*, 487 U.S. 931 (1988)). The involuntary servitude statute is not a vehicle for litigating disagreements over supervision, discipline, or therapeutic judgment. Here, Plaintiffs have failed to allege facts sufficient to support any of their claims.

### A.  *Plaintiffs Failed to Plead Facts Establishing Knowing and Intentional Participation Under the TVPRA.*

As a preliminary matter, Plaintiff's TVPRA claims are all fatally flawed because they failed to show the necessary element of intent. Every TVPRA claim requires knowing and intentional conduct. *See* 18 U.S.C. § 1589 (imposing liability upon defendants who "knowingly"

obtain or benefit from forced labor) and § 1590 (imposing liability upon defendants who "knowingly" recruit, harbor, transport, or provide persons for forced labor). Liability does not attach to inadvertent, negligent, or even grossly negligent conduct divorced from the requisite mental state.

Courts have consistently addressed this scienter requirement, making clear that a plaintiff must plead facts supporting either actual knowledge or, at a minimum, constructive knowledge of specific trafficking activity, not merely generalized awareness of industry wide risks. *See Muchira v. Al-Rawal*, 850 F.3d 605, 618, 622 (4th Cir. 2017), as amended (Mar. 3, 2017) (noting that a plaintiff asserting claims under 18 U.S.C. § 1589 had to show that a defendant had *intended* the plaintiff to believe that she should suffer serious harm if she did not perform forced labor, or that the defendant had *knowingly* abused the law to coerce the plaintiff).

Here, Plaintiffs do not plead facts plausibly showing that Defendants *intended* to coerce labor or *knowingly* participated in a trafficking venture, as required under the statute. Instead, the Complaint alleges, at most, negligence, mismanagement, or adherence to a program philosophy with which Plaintiffs disagreed – all mental states that fall well short of the deliberate, knowing participation the TVPRA demands. Plaintiffs' broad allegations regarding marketing statements, program descriptions, or corporate structure likewise fail to bridge this gap, as they do not give rise to a reasonable inference that Defendants possessed actual or constructive knowledge of forced labor, much less that they acted with the purpose of facilitating it. Absent well-pleaded, non-conclusory facts demonstrating that Defendants knowingly benefited from and intended to further a trafficking venture, the scienter element is not satisfied, and the TVPRA claims cannot proceed.

### B.    Plaintiffs Fail to Adequately Plead Forced Labor or Involuntary Servitude.

Even if Plaintiffs had satisfied the scienter element, they have failed to plead sufficient facts to otherwise make out their TVPRA claims. Forced labor under 18 U.S.C. § 1589 requires far more than the performance of tasks, chores, or structured program activities. The statute targets situations in which a defendant intentionally obtains labor by means of (1) threats of serious harm, (2) physical restraint, (3) abuse or threatened abuse of legal process, or (4) a coercive scheme designed to leave the victim with no reasonable alternative but to work. 18 U.S.C. § 1589. The Complaint pleads none of these essential elements.

As courts have made clear, § 1589 is directed at *serious* trafficking circumstances where traffickers restrain victims without overt violence, threaten harm to third persons, or invoke dire legal consequences such as arrest or deportation to compel service. *Muchira*, 850 F.3d at 618 (quoting *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011)).

When evaluating whether a defendant has obtained the forced labor through a threat of "serious harm," the relevant inquiry is objective: "the harm or threat of harm, considered from the vantage point of a reasonable person in the place of the victim, must be sufficiently serious to compel that person to remain in her condition of servitude when she otherwise would have left." *Muchira*, 850 F.3d at 618; *see also* 18 U.S.C. § 1589(c)(2). Typically, "forced labor" cases involve squalid or intolerable living conditions, extreme isolation from the outside world, threats of physical harm to the victim or others, threats of legal process such as arrest or deportation, and exploitation of language barriers or lack of education, all used to prevent vulnerable victims from leaving and to keep them bound to their captors. *Muchira*, 850 F.3d at 618-19. The statute was not enacted to federalize complaints about routine supervision, structured discipline, or ordinary

chores expected of minors in a residential setting.

In the Tenth Circuit, the "economic reality" of a relationship—such as whether a program is primarily educational/therapeutic versus economic employment—dictates whether "labor" is actionable. *See Marshall v. Regis Educ. Corp.*, 668 F.2d 1324, 1328 (10th Cir. 1981). Furthermore, requiring children to perform chores is standard *in loco parentis* prerogative, not labor trafficking. *See United States v. Toviave*, 761 F.3d 623, 625 (6th Cir. 2014) (holding that forcing children to do household chores under threat of abuse does not constitute forced labor, as expanding the TVPRA in such a manner would "federalize the traditionally state-regulated area of child abuse").

Here, Plaintiffs allege only that they were required to participate in cleaning, maintenance, or program-related activities. Such allegations are legally insufficient as a matter of law. In *Ruderman v. Kenosha Cnty.*, 752 F. Supp. 3d 1084, 1089 (E.D. Wis. 2024), the court held that a county jail did not engage in forced labor or human trafficking within the meaning of § 1589 by requiring inmates, including civil immigration detainees, to perform basic cleaning functions in common areas. Likewise, in *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017 (7th Cir. 2024), the Seventh Circuit rejected a TVPRA forced labor claim even where parolees and probationers worked up to 56 hours per week, received minimal food, performed heavy labor in unsafe conditions, and faced threats of expulsion and reincarceration, noting that they were ultimately free to leave the program. The allegations here are materially weaker than those rejected in *Taylor*.

The community service that Plaintiffs categorize as alleged forced labor constitutes a civic and educational requirement, not involuntary servitude. *See Steirer by Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989 (3d Cir. 1993) (holding that following the Supreme Court and other courts of appeals in confining the description of "involuntary servitude" to those situations that are truly

"akin to African slavery," and as such, there was "no basis in fact or logic that would support analogizing a mandatory community service program in a public high school to slavery, where the program is designed primarily for the students' own benefit and education, "notwithstanding some incidental benefit to the recipients of the services").

Critically, the Complaint contains no allegation that refusal to perform these tasks resulted in physical harm, unlawful restraint, or threats of legal consequences. Psychological pressure, public humiliation, and threats of bad standing do not constitute "serious harm" under the TVPRA. *See Headley v. Church of Scientology Int'l,* 687 F.3d 1173 (9th Cir. 2012). Allegations of discipline, loss of privileges, "comm block," or "feedback groups" do not constitute serious harm within the meaning of § 1589. Programmatic consequences inherent in a structured residential environment do not equate to coercion that would compel a reasonable person to remain in servitude.

Plaintiffs also offer nothing more than speculative assertions to support their claim that Defendants sought to obtain labor of economic value. Plaintiffs do not allege that their activities generated revenue, nor do they allege they were engaged in for-profit commercial activities. Instead, they speculate that Defendants relied on their labor to replace paid employees and reduce staffing costs. Doc. 1 ¶¶ 122–124, 135. The only factual basis for this speculation appears to be that Defendants operated the programs as for-profit businesses. However, Plaintiffs acknowledge that Defendants promoted the tasks and responsibilities assigned to residents as therapeutic techniques to help residents learn to care for themselves and develop positive peer culture. *Id.* ¶ 124.

For the same reasons, Plaintiffs fail to state a claim for involuntary servitude. The Supreme Court has narrowly defined involuntary servitude to require compelled service through physical or legal coercion; it explicitly excludes the purely psychological coercion (such as privilege systems or peer feedback) that Plaintiffs allege here. *See United States v. Kozminski*, 487 U.S. 931 (1988). The Complaint alleges no physical restraint preventing departure, no threat of force to compel continued service, and no facts suggesting confinement beyond the ordinary incidents of lawful custody. The restrictions Plaintiffs describe are inherent in any residential or custodial setting, particularly one involving minors placed by parents or guardians. Supervision, structure, and behavioral consequences are not enslavement. Absent allegations of force, threats of force, or coercion rising to the level recognized in trafficking jurisprudence, Plaintiffs' allegations do not state a claim for forced labor or involuntary servitude.

### C.      *Plaintiffs' Own Allegations Foreclose Any Plausible Inference of Recruitment or Harboring for Labor Exploitation Under 18 U.S.C. § 1590.*

Plaintiffs likewise do not plead facts sufficient to make out their claim that Defendants recruited, harbored, or transported them for labor exploitation. Indeed, their allegations undermine this claim. The TVPRA imposes distinct liability on one who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." 18 U.S.C. § 1590. Trafficking and harboring claims under 18 U.S.C. § 1590 require far more than the mere provision of housing, supervision, or programmatic services. As courts have recognized, liability for trafficking is analytically separate from liability for forced labor or involuntary servitude; it requires its own statutory elements and proof of a prohibited purpose. *Shukla v. Sharma*, No. 07-cv-2972, 2012 WL 481796, at *14 (E.D.N.Y. Feb. 14, 2012) (determining that liability for trafficking is separate from liability for forced labor or involuntary

servitude).

Plaintiffs' pleading does not come close to satisfying these requirements. They do not allege that Defendants recruited, transported, or obtained them for the purpose of exploiting their labor. To the contrary, Plaintiffs allege that Defendants marketed their programs, and that Plaintiffs were placed in residential programs by their own parents, who were seeking treatment, structure, and supervision for them. That factual allegation, accepted as true, negates any plausible inference that Defendants acted with the statutorily required purpose of labor exploitation.

Critically, § 1590 is purpose driven. The recruitment, harboring, or obtaining must be undertaken "for labor or services in violation of this chapter." 18 U.S.C. § 1590. The Complaint contains no factual allegations that Defendants accepted Plaintiffs into the programs to extract labor, to benefit from coerced services, or to facilitate any violation of the TVPRA. There are no allegations of a scheme to procure workers, no allegations of profit derived from compelled labor, and no factual content permitting a reasonable inference that labor exploitation was the objective of any alleged recruitment or placement.

Recharacterizing parental placement in a residential treatment program as trafficking does not satisfy the statute. Labels and conclusory assertions cannot substitute for well-pleaded facts establishing the requisite trafficking purpose. Absent any allegation that Defendants recruited or harbored Plaintiffs with the intent to subject them to unlawful labor exploitation, Plaintiffs fail to state a claim under § 1590 as a matter of law. The complete absence of any alleged exploitation purpose is fatal to the trafficking claims.

### D. Plaintiffs Fail to Plausibly Plead Beneficiary Liability.

Plaintiffs have also failed to plead that Defendants should be liable as beneficiaries of

alleged violations of the TVPRA. Under 18 U.S.C. § 1595(a), a trafficking victim may bring a civil action against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." The TVPRA provides a four-element test to determine beneficiary liability: (1) the defendant knowingly benefitted financially or by receiving anything of value; (2) from participating in a venture; (3) that violated the TVPRA as to the plaintiff; and (4) the defendant knew or should have known that the venture violated the TVPRA. 18 U.S.C. § 1595(a).

Where beneficiary liability has been litigated, courts have set a high bar for satisfying the above test. *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 468 (E.D.N.C. 2024) (dismissing TVPRA claim because the plaintiff's conclusory allegation of being "trafficked" lacked factual support, her repeated visits from "sex buyers" while the alleged trafficker waited elsewhere did not show coercion, and generalized "signs of trafficking" allegations failed to state a claim against the hotel or franchisor); *see also Doe #1 v. Red Roof Inns, Inc.,* 21 F.4th 714, 726 (11th Cir. 2021) (holding that victims of sex trafficking failed to plausibly allege that hotel franchisors "participated in a venture" that violated the TVPRA, as required to state a beneficiary claim under 18 U.S.C. § 1595, notwithstanding allegations that franchisors received room fees, sent inspectors who purportedly would have observed signs of trafficking, and received online reviews referencing sex work; concluding that the complaint did not show that franchisors took part in a common undertaking or enterprise with the traffickers).

Plaintiffs attempt to impose beneficiary liability without alleging facts establishing knowing participation in a trafficking venture. Beneficiary liability requires more than receipt of

revenue from lawful services. It requires knowledge of and participation in a venture that itself violates the trafficking statutes. Here, at most, Plaintiffs allege only that Defendants received tuition or fees for providing residential treatment. They do not allege facts showing that any Defendant knew of, participated in, or benefited from "forced labor." Conclusory allegations of profit, shared ownership, or corporate affiliation cannot substitute for pleaded knowledge and intent.

Specifically, Plaintiffs attempt to establish beneficiary liability by impermissibly lumping remote corporate parents—Wilderness Training & Consulting, LLC and WTC Holdco, LLC—into the collective term "Defendants." The Tenth Circuit has made clear that the "burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants." *See Robbins*, 519 F.3d at 1250 (granting a motion to dismiss where the complaint failed to distinguish acts attributable to individual defendants).Because the Complaint fails to differentiate among the defendants, making it impossible to ascertain what specific acts are attributable to each of these corporate parents, it fails to provide fair notice under Rule 8.

### E. *Plaintiffs' Attempt and Conspiracy Claims Are Entirely Conclusory and Legally Deficient.*

18 U.S.C. § 1594 establishes *criminal* liability for both attempt and conspiracy to commit human trafficking offenses. But the mere invocation of the statutory terms "attempt" and "conspiracy" does not suffice. A plaintiff must plead specific, non-conclusory facts that plausibly establish the required elements of each theory of liability.

To support a conspiracy claim under § 1594, the complaint must contain enough factual matter, taken as true, to suggest that an agreement was made. *Baxla v. Chaudhri*, 225 F. Supp. 3d 588, 594 (E.D. Va. 2016); see also *Twombly*, 550 U.S. at 556. Mere parallel conduct is not

sufficient to state a conspiracy claim, nor are conclusory allegations. *Id.* A plaintiff must allege facts permitting a reasonable inference of a "meeting of the minds" to accomplish an unlawful objective. Threadbare recitals of statutory language, devoid of supporting factual content, do not meet this standard. As established, Tenth Circuit precedent strictly prohibits the use of collective "Defendants" terminology to vaguely imply a conspiracy across corporate entities. *Robbins*, 519 F.3d at 1250.

Here, Plaintiffs' attempt and conspiracy allegations amount to nothing more than labels. The Complaint does not allege facts demonstrating the existence of any agreement to traffic or exploit Plaintiffs. It does not identify any co-conspirators, describe when or how an agreement was formed, or plead communications, coordinated actions, or other factual circumstances suggesting a shared unlawful purpose. There are no allegations of a common plan, division of roles, or any concerted decision-making tied to a trafficking objective. In short, the Complaint is devoid of factual content from which a plausible conspiracy could be inferred.

The attempt claim is equally deficient. An attempt requires factual allegations showing a specific intent to commit the underlying offense and a substantial step toward its commission. *United States v. Washington,* 653 F.3d 1251, 1264 (10th Cir. 2011). The Complaint contains no such allegations. It does not identify conduct that could plausibly constitute a substantial step toward a trafficking crime, nor does it plead facts supporting an inference of specific intent. Instead, Plaintiffs simply append the term "attempt" to their statutory claims without factual amplification.

Courts consistently reject such formulaic pleadings. As recognized in *Baxla v. Chaudhri,* conclusory assertions of conspiracy, unsupported by factual allegations of agreement, are

insufficient as a matter of law. 225 F. Supp. 3d 588. The same principle applies here. Because the Complaint fails to plead facts showing an agreement, a meeting of the minds, specific intent, or a substantial step toward a trafficking offense, Plaintiffs' § 1594 attempt and conspiracy claims must be dismissed.

## II.     PLAINTIFFS FAIL TO ADEQUATELY STATE A CLAIM UNDER 18 U.S.C. § 2255 (COUNT SIX).

To recover under the Child Abuse Victims' Rights Act, 18 U.S.C. § 2255, a plaintiff must establish that the defendant committed one of the specific predicate offenses enumerated in the statute. *Doe 9 v. Varsity Brands, LLC,* 679 F. Supp. 3d 464, 479 (D.S.C. 2023); *see also Doe 1 v. Varsity Brands, LLC,* 724 F. Supp. 3d 463, 470 (E.D.N.C. 2024) (holding that plaintiff failed to allege abusive conduct giving rise to § 2255). This requirement is not a mere formality. It is a threshold element that demands well-pleaded, non-conclusory factual allegations establishing that the defendant's conduct satisfies each element of the predicate offense. As such, § 2255 provides a derivative civil remedy that relies entirely on an underlying federal criminal violation.

Plaintiffs' claim under § 2255 fails because they have failed to adequately allege such a predicate offense. Plaintiffs rest their § 2255 claim on their TVPRA claims, alleging that they suffered personal injuries as a result of Defendants' purported violations of 18 U.S.C. §§ 1589 and 1590. Doc. 1 ¶¶ 192–194. However, as already discussed, Plaintiffs have failed to plead facts sufficient to make out claims under either § 1589 or § 1590.

Nor do Plaintiffs allege facts demonstrating abusive or exploitative conduct of the kind required to trigger liability under § 2255. As recognized in *Doe 1*, the failure to allege conduct rising to the level of an enumerated offense is dispositive. 724 F. Supp. 3d at 470. Here, the allegations describe, at most, Plaintiffs' disagreement with program structure, supervision, or

conditions, none of which fall within the scope of the criminal statutes incorporated into § 2255. Without factual content establishing each required element of a qualifying offense, the derivative claim cannot proceed. That is, if the underlying TVPRA claims fail, the derivative § 2255 claim necessarily fails as a matter of law.

Because Plaintiffs fail to plead facts plausibly establishing the commission of any predicate offense, the statutory prerequisites for recovery under § 2255 are not met. Accordingly, Count Six fails as a matter of law and should be dismissed.

## III.  PUBLIC POLICY OPPOSES USING THE TVPRA TO REVIVE TIME-BARRED STATE TORT CLAIMS.

Plaintiffs left Defendants' facilities years ago: E.W. and J.G. departed in 2018, and D.S. departed in 2020. Doc. 1 ¶¶ 9–11. Under Utah's applicable statutes of limitations, any state-law tort claims (e.g., medical malpractice, negligence, intentional infliction of emotional distress) Plaintiffs might have possessed expired well before this action was filed. *See* Utah Code Ann. § 78b-2-307. Public policy strongly opposes allowing plaintiffs to disingenuously invoke inapplicable federal claims to bypass state statutes of limitation. Shoehorning the TVPRA to fit these allegations would seek to federalize standard state-court issues, a breach of federalism that an appellate court has already declined to undertake. *See United States v. Toviave*, 761 F.3d 623, 625 (6th Cir. 2014) (rejecting the expansion of the TVPRA to federalize state-regulated areas of child abuse).

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request this Court dismiss the Complaint in its entirety with prejudice and award such further relief as the Court deems just and proper.

SLC 7937304.3

DATED this 20th day of March, 2026.

        SPENCER FANE LLP

        */s/ Nathan R. Skeen*
        Nathan R. Skeen
        Nathan A. Crane
        Christopher W. Droubay
        *Attorneys for Defendants*

SLC 7937304.3

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of March, 2026, I electronically filed the foregoing

**DEFENDANTS' MOTION TO DISMISS COMPLAINT** with the Clerk of the Court using the

CM/ECF System:

Rachel Sykes
PEARSON BUTLER
1802 S Jordan Parkway, Ste. 200
South Jordan, UT 84095
rachel@pearsonbutler.com

Gareth Purnell
GRIFFIN PURNELL
2037 Airline Rd, Ste. 200
Corpus Christi, TX 78412
gareth@griffinpurnell.com

*Attorneys for Plaintiff*


*/s/ Annette Gamero*

SLC 7937304.3